**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| MARYANN PUTMAN, | : | Case No. 1:21-cv-14 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Doc. 35)**

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 35). Plaintiff filed a response in opposition to the motion (Doc. 37), to which Defendant filed a reply in support (Doc. 38). Thus, this matter is ripe for the Court's review. For the reasons below, Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED**.

**FACTS**

Plaintiff Maryann Putman was an agent for Defendant Allstate Insurance Company. (Compl., Doc. 3, ¶ 5; EA Agreement, Doc. 34-1, Pg. ID 1550.) This case centers around Defendant's termination of Plaintiff's agent contract, which Plaintiff maintains was improper. (*See* Compl., Doc. 3.)

**I.      The EA Agreement**

To become an agent for Defendant, Plaintiff signed an "Allstate R3001S Exclusive

Agency Agreement" ("EA Agreement") on December 1, 2008. (*See* EA Agreement, Doc. 34-1, Pg. ID 1550-59.) The EA Agreement set the terms of Plaintiff's role as an agent for Defendant. (*See id.*)

Either party could terminate the EA Agreement "with cause, immediately upon providing written notice" to other party. (EA Agreement, Doc. 34-4, Pg. ID 1557.) "Cause may include, but is not limited to, breach of [the EA] Agreement, fraud, forgery, misrepresentation, or conviction of crime." (*Id.*) The EA Agreement incorporates Defendant's Agent Manual, which "explain[ed] and expand[ed] upon" the provisions in the EA Agreement. (EA Agreement, Doc. 34-4, Pg. ID 1550; Agent Manual, Doc. 1-3, Pg. ID 286.) Relevant here, the Agency Manual states that fraudulent activity includes "allowing a family member or other party to sign or otherwise act on behalf of the policy owner unless they are duly authorized to do so." (Agent Manual, Doc. 1-3, Pg. ID 328.)

If the EA Agreement was terminated, Plaintiff could, within 90 days of termination, sell her economic interests in the customer accounts that she may have developed. (AE Agreement, Doc. 34-1, Pg. ID 1556.) Alternatively, Plaintiff could elect to receive a "termination payment" from Defendant. (*See* Termination Letter, Doc. 1-3, Pg. ID 363; EA Agreement Supplement, Doc. 3, Pg. ID 438-39.)

## II.  Plaintiff's Conduct and Later Termination

On August 28, 2019, an individual named Jor-el Koenig called Defendant's customer service department. (Gold Decl., Doc. 6-1, Pg. ID 773.) Koenig had received a lapse-payment notice from Defendant for a life insurance policy that he had never purchased. (*Id.*) Koenig conveyed that he was diagnosed with cancer in December 2014,

2

and did not believe that he could qualify for a life insurance policy. (*Id.*) Koenig believed that his ex-wife, Katrina Ramirez, may have obtained the policy without his knowledge. (*Id.*)

Defendant conducted an internal investigation into Koenig's complaint. (Gold Decl., Doc. 6-1, Pg. ID 773.) The investigation uncovered that Plaintiff had issued Koenig's life insurance policy. (*Id.* at Pg. ID 774; Summary of Evidence, Doc. 6-1, Pg. ID 780.) The application had a box checked indicating that Plaintiff physically saw the named insured at the time the application was prepared and signed. (*Id.* at Pg. ID 780) However, the application was e-signed by "Mr. Koenig" and Plaintiff from two separate IP addresses— meaning that the parties were not physically together. (*Id.* at Pg. ID 777.) The policy application listed Ramirez as the primary beneficiary, contained Ramirez's information in various portions, and failed to disclose Koenig's cancer diagnosis. (Summary of Evidence, Doc. 6-1, Pg. ID 776-77.)

Defendant then interviewed the relevant parties. (*See* Summary of Evidence, Doc. 6-1, Pg. ID 777-79.) In Ramirez's interview, she admitted that she purchased the policy from Plaintiff for Koenig. (*Id.* at Pg. ID 778.) In Koenig's interview, he confirmed that he did not sign any documents or consent to a life insurance policy from Defendant. (*Id.* at Pg. ID 777.) In Plaintiff's interview, she maintained that she did not remember Koenig or his policy specifically, but that she would have obtained the information for the policy directly from Koenig. (*Id.*) But, Koenig continues to maintain that he never applied or otherwise attempted to obtain a life insurance policy with Defendant from Plaintiff. (Koenig Decl., Doc. 35-1, Pg. ID 1851-82.)

3

From the evidence collected, Defendant determined that Plaintiff had engaged in fraudulent activity by issuing Koenig a life insurance policy without his knowledge or consent and falsifying the application by indicating that she was physically present with the insured when she was not. (Gold Decl., Doc. 6-1, Pg. ID 774-75; Summary of Evidence, Doc. 6-1, Pg. ID 780.) Based on this finding, Defendant believed it had cause to terminate its relationship with Plaintiff. (Gold Decl., Doc. 6-1, Pg. ID 775; Summary of Evidence, Doc. 6-1, Pg. ID 780.) And, on September 22, 2020, Defendant notified Plaintiff that it was immediately terminating the AE Agreement. (Gold Decl., Doc. 6-1, Pg. ID 775; Termination Letter, Doc. 1-3, Pg. ID 363.) Plaintiff failed to sell her economic interest within the 90-day period prescribed by the EA Agreement, so Defendant paid Plaintiff a termination payment of $227,098.20. (Putman Dep., Doc. 34-1, Pg. ID 1431-32; Termination Payment Summary Report, Doc. 1-1, Pg. ID 8-11.)

### III.    Plaintiff's Objections to her Termination

Plaintiff was surprised by the termination and believes that it was unwarranted. (*See* Putman Dep., Doc. 34-1, Pg. ID 1389-90, 1407-08.) Plaintiff neither recollects processing Koenig's policy application nor recalls ever speaking with Koenig or Ramirez. (*Id*. at Pg. ID 1459-64.) But, Plaintiff maintains that, if she had issued a policy for Koenig, she would have talked to him directly. (*Id*. at Pg. ID 1459) Plaintiff states that she "would have never discussed a policy on someone else that was not the insured." (*Id*. at Pg. ID 1499-500.) Plaintiff concedes that she was not physically present with Koenig when the application was signed. (*Id*. at Pg. ID 1480-86.) But, she asserts that checking the box stating that she was with him was a simple mistake and nothing more. (*Id*.)

4

Plaintiff further maintains that the policy acquisition process has security measures that would have caught Koenig's improper application. (*See, e.g.*, Putman Dep., Doc. 34-1, Pg. ID 1460.) According to Plaintiff, agents often mistakenly check the box that states that they were physically present with an applicant. (Putman Aff., Doc. 37-1, Pg. ID 1895.) But, this mistake is usually identified and corrected in the underwriting review process. (*Id.*) Plaintiff also maintains that the underwriting process would have identified and remedied any other errors in the policy application. (Putman Dep., Doc. 34-1, Pg. ID 1460.)

## PROCEDURAL POSTURE

Plaintiff first brought an action against Defendant in the Warren County Common Pleas Court. (*See* Notice of Removal, Doc. 1.) Defendant removed that action to this Court based on diversity jurisdiction. (*Id.* at Pg. ID 1.) In her Complaint, Plaintiff brings a breach of contract claim against Defendant. (*See* Compl., Doc. 3, ¶¶ 7-16.) Plaintiff alleges that Defendant breached the EA Agreement by immediately terminating it without cause. (*Id.*) Defendant now moves for summary judgment on that claim. (*See* Motion for Summary Judgment, Doc. 35.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets

that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). And a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Defendant seeks summary judgment in its favor on Plaintiff's breach of contract claim. (Motion for Summary Judgment, Doc. 35.) Before the Court can consider the substance of this claim, it must first determine the applicable state law. The EA Agreement does not have a choice-of-law provision. (*See* EA Agreement, Doc. 34-1, Pg. ID 1550-59.) So, the Court must apply Ohio's choice of law rules, which "require a court to apply the law of the state with the most significant relationship to the contract." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996). Because Plaintiff resides in Ohio and performed the duties of the EA Agreement in Ohio, the Court applies Ohio law to the claim.

6

To prove a breach of contract under Ohio law, a plaintiff must prove four elements: (1) that a contract existed; (2) the plaintiff performed; (3) the defendant breached; and (4) the plaintiff suffered damages as a result of the breach. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). Plaintiff maintains that Defendant breached the EA Agreement by immediately terminating it without cause. (*See* Compl., Doc. 3, ¶¶ 7-16.)[1]

Defendant maintains that it had cause to terminate the EA Agreement after its investigation concluded that Plaintiff engaged in fraudulent activity. (Motion for Summary Judgment, Doc. 35, Pg. ID 35.) Defendant discovered that Plaintiff had issued a life insurance policy to Koenig without his knowledge or consent. (*See* Gold Decl., Doc. 6-1, Pg. ID 773.) The policy application had actually been filled out by Koenig's ex-wife, Ramirez, who did not have the authority to do so. (*Id.*; Summary of Evidence, Doc. 6-1, Pg. ID 778.) Plaintiff had also falsely marked on the application that she was present with Koenig when he signed the application. (Summary of Evidence, Doc. 6-1, Pg. ID 777, 780.) Based on those findings, Defendant determined that Plaintiff engaged in fraudulent activity and that it had cause to immediately terminate the EA Agreement. (*Id.* at Pg. ID 780; Gold Decl., Doc. 6-1, Pg. ID 774-75.)

In response, Plaintiff maintains that there are questions of fact relating to the investigation that preclude summary judgment. (Response, Doc. 37, Pg. ID 1888-90.)

_____

[1] In her response in opposition to the motion for summary judgment, Plaintiff also argues that Defendant breached the EA Agreement by (1) not providing her with a list of potential buyers for her economic interest and (2) paying Plaintiff the incorrect termination payment amount. (Response, Doc. 37, Pg. ID 1887-88; Statement of Facts, Doc. 37-2, Pg. ID 1286, 1916.) These alleged breaches were not raised in the Complaint (*See* Doc. 3) and are thus not appropriate for the Court's consideration on summary judgment. *See Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013) ("It is well-settled that a plaintiff may not expand [her] claims to assert new theories in response to summary judgment.") (citation omitted).

Plaintiff maintains that the investigation may have been wrong about Koenig's life insurance policy. (*Id*.) In support of this allegation, Plaintiff points to her own statements over the matter. (*Id*.) Plaintiff states that she would never issue a life insurance policy to someone that she did not speak to directly. (Putman Dep., Doc. 34-1, Pg. ID 1459.) Plaintiff also states that the underwriting process would have caught any discrepancies in the policy. (*Id*. at Pg. ID 1460.) And, though she admits to having improperly indicated that she was physically present with the applicant, Plaintiff maintains that Defendant should have known that it was only a mistake. (*Id*. at Pg. ID 1480-86.) These statements, Plaintiff maintains, create a sufficient question of fact about the accuracy of Defendant's investigation into Koenig's life insurance policy. (Response, Doc. 37, Pg. ID 1888-90.) The Court disagrees.

Plaintiff has not met her burden to show a genuine issue of material fact. Plaintiff points to no other evidence, other than her own statements, to show that the investigation was in any way incorrect or improper. These statements are nothing more than speculation—Plaintiff does not remember Koenig or his policy application, but nevertheless states that Koenig's policy could not have been improperly created because it is simply not something that she would do. (*See* Putman Dep., Doc. 34-1, Pg. ID 1459-64.) These statements only show that she did not agree with Defendant's internal investigation, not that the investigation was wrong. Plaintiff "cannot survive summary judgment through [such] speculation or conjecture." *Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) (citations omitted); *see also Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 779 (6th Cir. 2012) (no genuine dispute where the plaintiff's statements were

contradicted by all other evidence in the case). Moreover, even if the underwriting process should have caught errors in Koenig's application, this fact does not make Plaintiff's actions any less fraudulent. The same can be said for Plaintiff's act of falsely indicating that she was present with Koenig—even if it were only a mistake, it was nevertheless improper. With no other evidence, Plaintiff has not shown a genuine issue of material fact related to Defendant's investigation.

Based on its investigation, Defendant determined that Plaintiff engaged in fraudulent activity by (1) allowing Ramirez to create a life insurance policy on behalf of Koenig, without his permission or knowledge, and (2) checking the box that she was physically present with the insured, when she was not. (Summary of Evidence, Doc. 6-1, Pg. ID 780.) This fraudulent behavior fits into the definition of cause for immediate termination of the EA Agreement. (*See* EA Agreement, Doc. 34-4, Pg. ID 1557; Agent Manual, Doc. 1-3, Pg. ID 286.) Plaintiff does not dispute that fraudulent conduct constitutes cause for termination. (*See* Response, Doc. 37.) So, Defendant had cause to immediately terminate the EA Agreement with Plaintiff because she engaged in fraudulent activity. (*See* EA Agreement, Doc. 34-4, Pg. ID 1557; Summary of Evidence, Doc. 6-1, Pg. ID 780.) Defendant therefore did not breach the EA Agreement and summary judgment must be entered in Defendant's favor on Plaintiff's breach of contract claim.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 35) and **TERMINATES** this matter from its docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND